### EDWARD HINES LUMBER CO. v. CHAMBERLAIN.

(Circuit Court of Appeals, Seventh Circuit. March 1, 1902.)

No. 784.

1. ADMIRALTY—FREIGHT—BREACH OF CONTRACT—DEFENSES.

Where libelant contracted to transport a pile of lumber, which his agent had inspected, from Cheboygan to Chicago, by a steamer and certain barges, under an entire contract, and carried only a proportion of the amount, and the amount carried was less than the carrying capacity of the steamer and any one of the barges owned by libelant, it was no defense to libelant's breach of contract that one of the barges was disabled by the loss of a mast, and that the lumber consisted partly of strips and partly of boards, instead of being all boards.

2. SAME—DAMAGES.

Where libelant broke an entire contract of affreightment by refusing to transport all of a pile of lumber contracted to be carried, he was never-

theless entitled to recover for the lumber carried, less the damages sustained by the owner of the lumber by reason of the breach of contract.

8. SAME—TENDER—COSTS.

Where libelant failed to perform a contract for the carriage of lumber, and the owner tendered into court the amount which libelant was entitled to for carrying the part carried, less the amount of cash advanced for fuel and damages for increased freight it was compelled to pay for transporting the balance of the lumber, libelant was not entitled to costs, but a judgment should have been rendered in favor of the shipper, with costs from the time of the tender.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

Robert Rae, for appellant.

Chas. E. Kremer, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge.   This is a suit in admiralty brought by the appellee, who was engaged in the carrying business upon the lakes, to recover the sum of $537, as freight for carrying a cargo of lumber upon his steamer, the H. L. Worthington, from Cheboygan, Mich., to Chicago, Ill.   The respondent admitted the carrying of 358,000 feet of lumber at the price agreed upon of $1.50 per M., but denied its liability because the appellee had agreed to carry for appellant a certain pile of lumber containing about 1,000,000 feet, and had neglected and refused to carry more than the 358,000, and that, therefore, no freight was due for what was admitted to be carried.   There is no dispute about the facts.   Edward Hines, of the lumber company, gives this account of the transaction in his testimony:

"Mr. Blair, of the Chamberlain Company, came to our office soliciting freight. Asked us what freight we had and where it was located.   I told him among other lots of lumber we had at Cheboygan, Michigan, on Swift & Clark's dock, a quantity of hemlock approximately from 900,000 to 1,000,000 feet.   He stated he would telegraph Mr. Chamberlain, or the captain of one of his boats, to go and examine the lumber as regards length, dryness, and quantity, and as soon as he received the reply he would see me concerning the carrying of it.   Either the next day, or the second day following—I wouldn't be positive about that, but it was very soon after—he called again with a telegram, and stated he had heard from Cheboygan from his representative, and that the lumber was all right and he would like to carry it.   We had some talk about freight, finally settling on the rate of freight at $1.50 per thousand to carry the lot of lumber from Swift & Clark's dock.   He read me the telegram. I asked him to confirm in writing the contract, and he did so."

On November 4, 1900, Buchanan and Chamberlain, agents of appellee, residing at Cheboygan, reported to appellee by wire as follows:

"Have seen lumber marked 'Hines.'   If they give that lot it is as good as inch cull hemlock could be, from eighty to one hundred thousand four-inch strips, balance wide, all lumber from seven to sixteen feet, take it if freights suit."

On November 5, 1900, Chamberlain at Chicago writes to Hines, president of the Hines Lumber Company of the same place, as follows:

"As per conversation between you and our Mr. Blair this day by 'phone this confirms charter of steamer 'H. L. Worthington' and consort 'D. R. Martin,'

'J. B. Wilbur,' 'boards' from Swift & Clark's Mill, Cheboygan, to Chicago, $1.50 per M., prompt despatch. These loads in accordance with enclosed telegram, which kindly return and oblige.

"Yours, respectfully,          [Signed]     S. R. Chamberlain & Co.
"Correct: S. R. Chamberlain."

On the 7th of November the appellant wrote to Chamberlain the following letter of acceptance:

"Referring to your favor of the 5th inst., we accept of the charter. The lumber is all on Messrs. Swift & Clark's dock, as we understand it, and there is approximately about 1,100,000 feet of it. We have to-day written Messrs. Martin & Silliman to give your boats prompt dispatch. Kindly advise us definitely which of the consorts we will get with the Worthington and about when they will be there, so we will be able to give them immediate dispatch.

"Respectfully yours,          Edward Hines Lumber Company."

The appellee was the owner of the steamer H. L. Worthington and the barges D. R. Martin, J. B. Wilbur, and A. T. Bliss. The Worthington towed as her consorts the three barges and their cargoes, constituting an entire affreightment. The appellee carried on the steamer 358,000 feet, which was less than her carrying capacity, and either one of the barges had a capacity to carry the entire cargo contracted for, except the Martin. Before any attempt was made to carry the lumber the price of freights, as is perhaps usually the case at that time of the year, had considerably advanced, and the lumber company, upon refusal to carry the balance of the lumber, was compelled to pay an advance of 50 cents per thousand, which amounted to the sum of $279.57; that is to say, the respondent had to pay $2 per thousand to another steamer, the Marshall, to get the lumber brought to Chicago. Several excuses were made by the libelant's agent for not furnishing vessels. One was that the Martin was not unloaded in time to go back with the Worthington, saying, at the same time, he would see about it, and finally saying that he could not send the Martin on account of a mishap to the vessel, which had lost her mast. Respondent asked him to get a vessel and take the lumber, if his own vessels could not. The libelant not doing anything about it, the respondent served him with notice that he would go out and charter a vessel, at the lowest rate possible, to carry the lumber, as it was obliged under contract to have it that fall.

These, it seems to the court, were lame and impotent excuses for not fulfilling the contract. The appellee had agreed to carry the lumber. He had the means for doing it. If one barge was disabled he had more; or, if he had not, he should have furnished them. It was not the respondent's fault that the Martin was disabled, if the breaking of a mast was sufficient for that purpose. In putting in the libelant's case, no excuse whatever was offered for not carrying the balance of the lumber, but on cross-examination of the respondent's witnesses the appellee first made the above excuse of disablement of the Martin; also the excuse that the lumber consisted partly of strips and partly of boards, instead of being all boards. This last excuse is as weak as the other. The appellee had an opportunity to inspect the pile of lumber and did inspect it by his agent, and, presumably with full knowledge of its character, entered into the contract. It is too late now to say that some of the boards were less than eight inches in width,

which it seems is the dividing line between boards and strips. It is quite apparent that the real reason for not carrying out the contract was that it was getting late in the navigation season, and the freights had advanced. The appellee comes into court, then, with not any too clean hands, admitting, as he does, that he agreed to carry the entire pile of lumber and carried only a moiety. He asks to be paid for what he did carry without offering to allow any damages for not fulfilling the contract by carrying the balance of the cargo. On the other hand, the appellant insists that no recovery can be had, because the contract was not completely carried out by appellee. No doubt this would be the rule at common law, except in states where the more equitable rule has prevailed, as in New Hampshire. In the admiralty courts in a case like this, where the party may be compensated in damages, the rule has prevailed to allow the freighter to recover for the freight carried, deducting the damages sustained by the other party on account of the breach. This seems more equitable than the common-law rule that, in order to recover, the plaintiff must show as a condition precedent a substantial compliance with the contract. The Salem's Cargo, 1 Spr. 389, Fed. Cas. No. 12,248; The Marcella, 1 Woods, 302, Fed. Cas. No. 13,797. Upon the acknowledged law of this case we think the decree must be reversed. The court below decided the case upon right principles, with a single exception. Instead of allowing the appellant his entire damages of 50 cents per thousand, it allowed him one-half of the damages, or 25 cents per thousand. The court states in its opinion that it is satisfied that the libelant should bear a part of the damages occasioned by the failure to fulfill the contract. But why not the full damages, so long as the entire damage was caused by the failure of the libelant to perform? It is evident that this is not a case where the court should apportion the damages as in case of collision, where both parties are at fault.

It is in evidence that the lumber company had furnished on the trip $203 to buy fuel, which belonged to the libelant to furnish. About this item there is no dispute. The respondent on the hearing paid into court as a tender to the libelant $55. This, with the fuel bill, $203, and $279.87 damages for failure to carry the entire cargo, amount to $537.87, while the freight amounts to but $537, leaving a balance in appellant's favor of $.87.

The account would stand thus:

| | | |
|---|---:|---:|
| Charge appellant with freight bill............................. | | $537 00 |
| Cr. by cash for fuel......................................... | $203 00 | |
| Money paid into court....................................... | 55 00 | |
| Damages ................................................... | 279 87 | |
| To balance ................................................ | | 87 |
| | $537 87 | $537 87 |

Balance in favor of appellant, 87 cents.

This is not a case where libelant could have recovered costs, coming into court appealing to the conscience of the court to allow him what he had actually earned, while admitting that he had not fulfilled his contract. We think the libelant should have accepted the tender made on the hearing as a settlement of the case, and made no further costs. Having refused to do so, and the damages, with fuel bill and costs,

paid into court, amounting to the full sum of the libelant's freight bill, the decree of the court below should be reversed, with directions to enter a decree in favor of the appellant, dismissing the libel, with costs, from the time of the tender in open court. It is so ordered.